NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the matter of | : | Case No. 05-38630/JHW |
| Terry Flores | : | **OPINION** |
| Debtor. | : | |
| _____ | : | |

APPEARANCES:  Charlotte Hollander, Esq.
100 Essex Avenue
Suite #300
Bellmawr, New Jersey  08031
Counsel for the Debtor

Michelle Banks-Spearman, Esq.
Assistant City Attorney
Office of City Attorney
City Hall, 4th Floor, Room 419
P.O. Box 95120
Camden, New Jersey  08101-5120
Counsel for the City of Camden

**FILED**
JAMES J. WALDRON, CLERK
March 29, 2006
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Terry O'Brien, Judicial Assistant to
Chief Judge Wizmur

Before the court for resolution is the debtor's objection to the City of Camden's proof of claim. The debtor challenges the interest rate used by the City to calculate the present value of its claim to be paid over the course of the debtor's Chapter 13 plan. The debtor seeks to impose the prime rate, plus a risk factor, following the formula approach announced by the U.S. Supreme Court in <u>Till v. SCS Credit Corp</u>., while the City contends that it is entitled to use the 18% statutory interest rate that is associated with its tax sale

certificate. The City discounts any reliance on the <u>Till</u> opinion, characterizing it as a nonbinding plurality decision. Because the <u>Till</u> court has articulated a clear legal standard establishing the interest rate to be used to determine the present value of a claim, the debtor's objection will be sustained.

## **FACTS**

Terry Flores filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 6, 2005. Ms. Flores scheduled an interest in property located at 544 York Street, in Camden, New Jersey, with a fair market value of $30,000.00 and no secured creditors. The debtor listed the City of Camden as a priority unsecured creditor with a claim for unpaid real estate, sewer and water taxes in the amount of $22,129.00. Debtor's Chapter 13 plan proposed to pay $693.04 a month for 60 months, paying the City's claim in full, with unspecified interest.

The City of Camden (hereinafter "the City") filed a secured proof of claim on October 14, 2005 in the amount of $34,567.20. The City holds a municipal tax lien in the prepetition amount of $22,687.69. The City's claim is based on an amortization of its prepetition tax lien at the statutory interest rate of 18%,

factored over the course of the debtor's 60 month plan.[1]

On October 27, 2005, the debtor filed an objection to the City's proof of claim, challenging the City's use of the 18% statutory interest rate to calculate the present value of its claim. The debtor contends that because the City does not hold a "security interest", as that term is defined in 11 U.S.C. § 101(51), the debtor may "cram down" the City's claim, i.e. modify the interest rate used to calculate present value for Chapter 13 plan purposes, under section 1322(b)(2) of the Bankruptcy Code.[2] Relying on the U.S. Supreme Court's decision in <u>Till v. SCS Credit Corp.</u>, the debtor proposes to reduce the City's interest rate to 7.75%, reflecting the prime rate of 6.75%, plus a risk factor of 1%. This rate will result in a total payout to the City of $27,438.00 over the course of the debtor's Chapter 13 plan.

---

[1] The amount due of $22,687.69 includes current (as of the date of the filing of the proof of claim) tax and utility charges of $146.32, plus prepetition principal and interest owing in the amount of $22,541.37. The prepetition amount includes $6,701.95 in taxes ($3,346.22 principal and $3,355.73 interest), $4,147.43 in water charges ($2,116.68 principal and $2,030.75 interest), $2,660.49 in sewer charges ($1,394.62 principal and $1,265.87 interest), $8,994.50 in utility charges ($3,321.12 principal and $5,673.38 interest) and $37.00 in fees. The prepetition delinquencies date back to 1989.

[2] A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principle residence." 11 U.S.C. § 1322(b)(2).

The City opposes the proposed interest rate reduction and cites to this court's unpublished decision in In re Tillman for the proposition that a municipal tax lien creditor can only achieve the "present value" of its claim "by imposing the municipality's statutory rate of interest on the claim." In re Tillman, No. 03-28307/JHW, *8 (Bankr. D.N.J. May 6, 2004) (unpub. opin.) (citing to Rankin v. DeSarno, 89 F.3d 1123, 1128 (3d Cir. 1996)). The City also discounts the debtor's reliance on the Till decision, stating that Till involved a mortgage rather than a tax sale certificate, and that in any event, the case has no precedential value because it is a plurality decision.

## **DISCUSSION**

A proof of claim is deemed allowed unless a party in interest timely objects. 11 U.S.C. § 502(a). While the initial burden is on the claimant to allege sufficient facts to support its claim, In re Allegheny Intern., Inc., 954 F.2d 167, 173 (3d Cir. 1992), the burden shifts to the objector to overcome the prima facie nature of a properly filed and supported claim. Id. "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." Id. See also In re Mariner Post Acute Network, Inc., 155

Fed.Appx. 611, 612 (3d Cir. 2005); In re Buchholz, 224 B.R. 13, 20 (Bankr. D.N.J. 1998).

In this case, the debtor does not object to the principal amount indicated as due in the City's proof of claim.  Rather, the debtor contests the application of the 18% statutory interest rate on a tax sale certificate to calculate the present value of the City's claim to be paid over the course of the debtor's plan. In response, the City directs our attention to this court's unpublished decision in In re Tillman, No. 03-28307/JHW (Bankr. D.N.J. May 6, 2004).

    A.    Present Value Interest Rate.

In Tillman, the debtor objected to the compounding of interest by the City of Camden on its claim.  The City filed a proof of claim in the amount of $12,774.22, comprised of $8,733.33 in principal and $4,040.89 in prepetition interest and penalties, and then sought to add $6,688.58 in interest, at 18%, to the claim over the course of the debtor's plan.  The debtor objected to the City's claim to the extent that it sought interest on interest, and proposed instead to pay the City $7,400.00 at 12% interest over the course of the plan.

I determined first that the City's allowed claim was comprised both of principal and matured prepetition interest. Id. at 6-7. Under 11 U.S.C. § 1325(a)(5)(B)(ii), the City was entitled to receive the present value of its entire allowed claim, utilizing interest to compensate for that value over the course of the debtor's plan. To that extent, compounded interest was authorized. Citing to Rankin v. DeSerno, I concluded that the City could achieve the "present value" of its claim by calculating interest at the statutory interest rate applicable to delinquent municipal tax accounts in New Jersey. Id. at 8.

In Rankin, the county, municipality and school district each objected to confirmation of the debtor's Chapter 13 plan, which proposed to reduce the interest rate to be paid to various over secured prepetition tax claimants. Rankin v. DeSerno, 89 F.3d 1123 (3d Cir. 1996), cert. denied, 519 U.S. 1108, 117 S. Ct. 943, 136 L.Ed.2d 832 (1997). The claim asserted by the plaintiffs utilized the municipal interest rates to calculate the present value, while the debtors sought to impose a more "reasonable" rate. Turning first to section 1322(b)(2), the Third Circuit agreed that the tax liens in question did not qualify for anti-modification protection as "security interests" because they "arose under state statute, and not from a consensual or voluntary agreement with the taxpayer defendants." Id. at 1127. Because the tax liens were not "lien[s] created by an agreement," the debtors could modify the rights of the

lienholders under section 1322(b)(2).

Turning next to section 1325(a)(5)(B)(ii), the court noted that "[p]resent value is a market rate concept, determined by the use of an interest rate which fairly compensates the creditor for not receiving the full amount of its secured claim upon confirmation of the debtor's plan." Id. at 1128. Citing to its earlier decision in GMAC v. Jones, 999 F.2d 63, 67 (3d Cir. 1993), the Third Circuit reiterated that the "'coerced loan' theory should provide the starting point for determining interest rates under § 1325(a)(5)(B)(ii)." Id. at 1129. The court acknowledged that the circumstances of a nonconsensual tax lien creditor were different from the market loan in Jones, but concluded nonetheless that "[w]hile the analogy is not perfect, it is sufficient: an entity forced to delay payment that it is entitled to receive is, in effect, extending a loan." Id. at 1130. The court overruled the debtors' arguments that using the statutory rate constituted a penalty, and disagreed with Judge Sarokin's dissent, which favored the use of the prime rate.

Eight years later, in Till, the Supreme Court addressed the question of the appropriate interest rate to be used in calculating present value for purposes of section 1325(a)(5)(B)(ii). Till v. SCS Credit Corp., 541 U.S. 465, 124 S. Ct. 1951, 158 L.Ed.2d 787 (2004). In Till, the Chapter 13 debtors

sought to pay back a truck loan over the course of their Chapter 13 plan by modifying the contract rate of 21% to a rate of 9.5%, reflecting a prime rate of 8.0% and a risk factor of 1.5%.  The Court was asked to determine which of four approaches best equated with the "present value" requirement of 11 U.S.C. § 1325(a)(5)(B)(ii)[3]:  the coerced loan, the presumptive contract rate, the cost of funds or the formula approach.  See In re Cantwell, 336 B.R. 688(Bankr. D.N.J. 2006) (reviewing the Till decision).

The Court recognized that making payments over time does not provide the creditor with the same benefit as a lump sum payment, and that

> A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment.  The challenge for bankruptcy courts reviewing such repayment schemes, therefore is to choose an interest rate sufficient to compensate the creditor for these concerns.

541 U.S. at 474, 124 S. Ct. at 1958.  In choosing the appropriate interest rate, the Court noted that although the Code "entitles the creditor to property whose present value objectively equals or exceeds the value of the collateral, it does

---

[3]  Under section 1325(a)(5)(B), when the debtor proposes to retain a secured creditor's collateral, the secured creditor must be provided with property through the plan whose total "value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

-8-

not require that the terms of the cram down loan match the terms to which the debtor and creditor agreed prebankruptcy, nor does it require that the cram down terms make the creditor subjectively indifferent between present foreclosure and future payment. Indeed, the very idea of a "cram down" loan precludes the latter result." Id. at 476-77, 124 S. Ct. at 1959-60. The Court rejected the coerced loan, the presumptive contract rate, and the cost of funds approaches, opting for the formula approach because it "entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings." Id. at 479, 124 S. Ct. at 1961. As is relevant here, the Court specifically rejected the "coerced loan" approach because it

> requires bankruptcy courts to consider evidence about the market for comparable loans to similar (though nonbankrupt) debtors-an inquiry far removed from such courts' usual task of evaluating debtors' financial circumstances and the feasibility of their debt adjustment plans. In addition, the approach overcompensates creditors because the market lending rate must be high enough to cover factors, like lenders' transaction costs and overall profits, that are no longer relevant in the context of court-administered and court-supervised cram down loans.

Id. at 477, 124 S. Ct. at 1960.

The formula approach "begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower

to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default." Id. at 478-79, 124 S. Ct. 1961. In adopting the formula approach, the Till Court considered that (1) there are several provisions in the Code requiring a present value calculation, 541 U.S. at 474, 124 S. Ct. at 1958; (2) it is likely that Congress intended the same approach to be used in each case, Id., 124 S. Ct. at 1959; (3) "Congress would favor an approach that is familiar in the financial community and that minimizes the need for expensive evidentiary proceedings," Id. at 474-75, 124 S. Ct. at 1959; (4) the Code expressly provides that the creditor's rights may be modified in this instance, Id. at 475, 124 S. Ct. at 1959; (5) "the bankruptcy establishes that the debtor is overextended," Id., and (6) the Code does not require the plan terms to agree with the loan or lien terms, Id. at 476, 124 S. Ct. at 1959. The Till decision was influenced by the belief that "Congress intended to create a program under which [Chapter 13] plans that qualify for confirmation [will] have a high probability of success," Id. at 482, 124 S. Ct. at 1963, rather than being doomed to failure because of "default cram down rates [set] at absurdly high levels." Id. at 483, 124 S. Ct. at 1963. The Court recognized that the "present value" calculation was intended to compensate the creditor for the "time value of their money and the risk of default," but not at the expense of the debtor. Id. at 477, 124 S. Ct. at 1960. In this manner, the court sought to balance the interests of the creditor to receive the value of its

claim with the interest of the debtor to successfully consummate his/her Chapter 13 plan.

The <u>Till</u> Court noted that absent any uncertainty about the debtor's ability to "complete his plan, the prime rate would be adequate to compensate any secured creditors forced to accept cram down loans." <u>Id</u>. at 479 n.18, 124 S. Ct. at 1961 n.18. Where there is some risk that the debtor will be unable to pay, the court should factor in a percentage to reflect the relative risk of nonpayment. While the risk adjustment is flexible, "other courts have generally approved adjustments of 1% to 3%." <u>Id</u>. at 480, 124 S. Ct. at 1962.

After <u>Till</u>, most courts addressing the question of present value have applied the prime plus formula approach. <u>See</u>, <u>e.g.</u>, <u>In re Smith</u>, 310 B.R. 631, 633 (D.Kan. 2004); <u>In re Robinson</u>, 338 B.R. 70 (Bankr. W.D.Mo. 2006); <u>In re Caple</u>, NO. 05-50213, 2005 WL 1287991 (Bankr. M.D.N.C. Apr 04, 2005); <u>In re Pike</u>, NO. 03-16382, 2005 WL 3481502 (Bankr. D.Kan. Mar 10, 2005); <u>In re Willoughby</u>, 324 B.R. 66, 70 (Bankr. S.D.Ind. 2005); <u>In re Nowlin</u>, 321 B.R. 678, 685 (Bankr. E.D.Pa. 2005); <u>In re Berksteiner</u>, NO. 03-13203, 2004 WL 2201300 (Bankr. S.D.Ga. Sep 09, 2004); <u>In re Bivens</u>, 317 B.R. 755, 763 (Bankr. N.D.Ill. 2004); <u>In re Harken</u>, NO. 04-02914, 2004 WL 3019467 (Bankr. N.D.Iowa Nov 29, 2004); <u>In re Pokrzywinski</u>, 311 B.R. 846, 849 (Bankr.

Case 05-38630-JHW    Doc 26    Filed 03/29/06    Entered 03/29/06 14:56:58    Desc Main
                          Document      Page 12 of 17

E.D.Wis. 2004). But see In re Cook, 322 B.R. 336 (Bankr. N.D. Ohio 2005).

For example, in Cachu, the Chapter 13 debtor sought to cram down the interest rate to be applied to the county's claim for real property taxes. In re Cachu, 321 B.R. 716, 718-19 (Bankr. E.D.Cal. 2005). The debtor proposed to pay interest at the rate of 2.5% over the course of a 60 month plan. The county acknowledged that the debtor was not bound to pay the 18% statutory interest rate, but sought to compel the debtor to comply with the Till formula for the calculation of interest. Id. at 723. The prime rate at the time was 4.25%. The bankruptcy court agreed that Till provided the starting point at the prime rate of interest. As to a risk adjustment, the court concluded that "there is generally no other category of claims in any bankruptcy proceeding that has less risk of nonpayment than the real property taxes." Id. at 721. Since the tax claim was secured by a lien and held a priority position under state law, the court concluded that a risk adjustment of 0.5% was appropriate. Id. at 723.

A nearly identical situation is presented here. The debtor proposes to pay interest on the City's claim over the life of her Chapter 13 plan at the prime rate plus 1% for risk adjustment. The risk adjustment of 1% is appropriate, particularly because, as in Cachu, the tax claim is secured by a lien and holds

-12-

a priority position under state law.  See N.J.S.A. 54:5-6[4]; N.J.S.A. 54:5-9[5].  The debtor's proposal is entirely consistent with Till, which effectively overruled Rankin.  My earlier decision in Tillman, that the applicable interest rate for present value payments on municipal taxes under section 1325(a)(5)(B)(ii) should be the statutory interest rate applicable to delinquent municipal tax accounts in New Jersey, relied primarily on Rankin, which cannot now be followed after Till.

I conclude that the debtor's challenge to the interest rate employed by the City for present value purposes is sustained.  The debtor may pay the City the amount of its claim, calculated with interest at the prime rate with a 1% risk adjustment over the life of the debtor's Chapter 13 plan.

---

[4]    N.J.S.A. 54:5-6 provides that:

Taxes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien.

[5]    N.J.S.A. 54:5-9 provides that:

Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens.

B.  Impact of Plurality Opinion.

Alternatively, the City argues that the Till decision is not binding precedent because it is only a plurality decision, citing to In re Cook, 322 B.R. 336 (Bankr. N.D. Ohio 2005). In Cook, the bankruptcy court agreed that the plurality's prime rate plus risk adjustment approach in Till was not precedential,[6] concluding that the "lack of a legal rationale shared by five Justices leads to the inescapable conclusion that Till does not produce binding precedent." Id. at 341. Applying the "narrowest grounds" test, which views the holding of the court to include opinions by those justices who concurred on the narrowest grounds, the bankruptcy court determined that there was no common denominator among the Till opinions. Id. at 342 (citing to Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L.Ed.2d 260 (1977)). "While the plurality and the concurrence might agree that the prime rate is an appropriate starting point in determining the proper rate of interest, the reasoning used to reach this conclusion shares no common ground." Id. Accordingly, the court concluded that "[d]ue to the lack of a consensus on a legal rationale, the Till decision results in no binding precedent." Id. at 343.

---

[6] Note that the Cook decision involved interest as applied pursuant to 11 U.S.C. § 1325(a)(4), rather than the similar language in section 1325(a)(5)(B)(ii) analyzed in Till.

In <u>Marks</u>, the Supreme Court stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" <u>Marks</u>, 430 U.S. at 193, 97 S. Ct. at 993 (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 2923, 49 L.Ed.2d 859 (1976)). The Third Circuit has explained further that

> in splintered decisions . . . where no single rationale "enjoys the assent of five Justices," the situation becomes more complex, but the controlling principle is the same. Where a Justice or Justices concurring in the judgment in such a case articulates a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree, that standard is the law of the land.

<u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 947 F.2d 682, 693 (3d Cir. 1991), <u>aff'd in part</u>, <u>rev'd in part</u>, 505 U.S. 833, 112 S. Ct. 2791, 120 L.Ed.2d 674 (1992). <u>See</u> <u>Rappa v. New Castle County</u>, 18 F.3d 1043, 1057 (3d Cir. 1994) (applying <u>Planned Parenthood</u> standard). <u>See also</u> William G. Peterson, "Splintered Decisions, Implicit Reversals and Lower Federal Courts: Planned Parenthood v. Casey," 1992 B.Y.U.L. REV. 289 (1992). In other words, "[w]e need not find a legal opinion which a majority joined, but merely 'a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree.'" <u>United States v. Williams</u>, 435 F.3d 1148, 1157 (9th Cir. 2006) (quoting <u>Planned Parenthood</u>, 947 F.2d at

693).

In <u>Till</u>, we are able to deduce a "legal standard." The plurality opinion concluded that the appropriate standard was the prime rate plus a risk factor. Justice Thomas concurred in the judgment, but disagreed that there should be an adjustment for risk. The dissent favored using the contract rate with a risk factor. Thus, we have five justices favoring the prime rate, four justices preferring the contract rate, and eight justices concluding that the base rate should be adjusted for the risk of default. <u>See</u> Thomas J. Yerbich, "How do You Count the Votes -- or Did <u>Till</u> Tilt the Game?", 23 AM. BANKR. INST. J. 10 (2004). The legal standard for calculating present value in the context of section 1325(a)(5)(B)(ii) is ascertainable. The legal standard is the prime rate plus a risk factor. <u>See</u>, <u>e.g.</u>, <u>In re Bivens</u>, 317 B.R. at 763 ("The Supreme Court ended the dispute among the circuit courts as to which approach provides equivalent present value of an allowed secured claim as paid over time when it decided <u>Till v. SCS Credit Corp</u>.").

The debtor's objection will be upheld. The City's proof of claim will be modified to reflect the calculation of interest on the City's claim through the life of the plan at 7.75%. Debtor's counsel shall submit a form of order.

Dated:    March 27, 2006

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT